IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BAKARI H. GLYMPH-DOZIER and SOLOMON HILL, on behalf of themselves and all other similarly situated persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:21-CV-748 |
| GRAPEVINE OF NORTH CAROLINA, INC. d/b/a GRAPEVINE DISTRIBUTORS OF THE CAROLINAS, and SCOTT A. COHEN, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on the parties' joint motion for final approval of a proposed settlement agreement for two class actions under Rule 23 and two collective actions under the Fair Labor Standards Act (FLSA). In December 2022, the Court preliminarily approved the proposed settlement, ordered settlement notices to be sent to the putative class and collective members, and set a fairness hearing. The fairness hearing was held on April 20, 2023. No class member filed an objection to the proposed settlement, and no class member opted-out. The Court has considered the record, the proposed settlement agreement, the supporting documents, and the statements of counsel during the fairness hearing and previous hearings. The Court finds that the proposed settlements, including two recently-identified employees, meet the requirements of Rule

23 and the FLSA and that the requested attorneys' fees are appropriate. The joint motion for final approval will be granted.

I. Background

A. The Claims

In September 2021, the plaintiffs Bakari Glymph-Dozier and Solomon Hill filed FLSA and state wage-and-hour claims and claims for unauthorized wage deductions under state law against the defendants Grapevine of North Carolina, Inc. d/b/a Grapevine Distributors of the Carolinas (Grapevine) and Scott A. Cohen. Doc. 1. Grapevine is a closely-held corporation owned by the Cohen family, including defendant Scott Cohen. *Id.* at ¶¶ 10, 12. Grapevine sells wine and distributes wine to retailers in North and South Carolina. *Id.* at ¶ 10. The plaintiffs both worked as delivery drivers for Grapevine in North Carolina and Mr. Hill also worked in South Carolina. *See id.* at ¶ 9(a)–(c).

The plaintiffs claim that the defendants violated the FLSA, the North Carolina Wage and Hour Act (NCWHA), and the South Carolina Payment of Wages Act (SCPWA) by paying their employees a regular weekly lump sum regardless of the number of hours worked and by not paying time-and-a-half for overtime. *See id.* at ¶¶ 1–2, 4, 48–55, 60–63.

As to the North Carolina employees, the plaintiffs have two additional claims. First, they allege the defendants deducted $8 per week from employee wages for the cost of providing employer-required company uniforms, which the plaintiffs contend violates North Carolina law. *Id.* at ¶¶ 3, 45(a), 56–59. Second, they allege that the defendants deducted from employee wages for alleged breakage of wine products without complying

2

with applicable North Carolina laws requiring advance written notice and limiting deductions for breakage to deliberate destruction. *Id.* at ¶¶ 3, 45(b), 56–59.

The plaintiffs sought class certification for the state law claims under Federal Rule of Civil Procedure 23 and conditional certification of a collective action for the federal claims under the FLSA. *Id.* at 32. In March 2022, the parties participated in an all-day mediation session with an experienced wage-and-hour mediator. Doc. 58-1 at ¶¶ 5–6; Doc. 39-3 at ¶ 6; *see* Doc. 18. The parties reached an agreement in principle, subject to court approval. *See* Doc. 18.

### B. Original Proposed Settlement and September 2022 Hearing

The parties filed their first joint motions for preliminary approval of the settlement agreement and certification of the class and collective actions in July 2022. Docs. 27, 29. The agreement was straightforward as to the settlement of the unpaid overtime claims, providing what seemed to be full compensation for back wages, but it did not explicitly address the North Carolina claims for unauthorized deductions or clearly explain the liquidated damages issues. The Court had other concerns about some of the details in the proposed settlement agreement and the notice. *See* Text Order 08/17/2022.

The parties addressed these concerns at a hearing held on September 15, 2022. *See* Minute Entry 09/15/2022. In summary, the parties clarified that the agreement provided full compensation for back wages and almost 90% of liquidated double damages to all employees, that it provided recovery for any unauthorized uniform deductions, and that there was no recovery for deductions based on non-deliberate product breakage because the parties found no evidence that this occurred. While

3

continuing to deny intentional wrongdoing, defense counsel explained that a record-keeping error occurred during a transition to a system that allowed more predictable paychecks and scheduling for drivers and caused the pay discrepancy.

The hearing resolved many issues, but the Court continued to have technical concerns about the clarity of the settlement terms and about the form of the notice. *See* Text Order 09/15/2022 (ordering the parties to address a liquidated damages issue). The parties were directed to re-file their motions, notices, and supporting documents to clarify the terms of the agreement and explain why it was adequate.

### C. Revised Filings and Preliminary Approval

In September 2022, the parties filed new joint motions. Docs. 39, 41. They presented a revised settlement agreement, Doc. 39-2 at 1–26, revised proposed notices that were separated for the North and South Carolina employees instead of combined, *id.* at 27–45, 51–69, and revised claim forms to the same purpose. *Id.* at 46–47, 70–71.

The parties sought provisional certification of two Rule 23 classes: (1) a two-year NCWHA class for the state law overtime claims and the claims for unauthorized deductions and (2) a three-year SCPWA class for the state law overtime claims.[1] Doc. 41 at 2–3. They also sought conditional certification of two FLSA collective actions for the federal overtime claims: (1) a two-year collective action for North Carolina employees and (2) a two-year collective action for South Carolina employees. *Id.*

---

[1] The statute of limitations under the SCPWA is three years, S.C. Code Ann. § 41-10-80(C), whereas the statute of limitations under the NCWHA and the FLSA is normally two years. *See* N.C. Gen. Stat. § 95-25.22(f); 29 U.S.C. § 255(a).

4

Under the revised settlement agreement, which was generally consistent with the original settlement, the defendants will pay a lump sum of $100,403.60, plus an award of $6,000 to be divided equally between the two named plaintiffs. Doc. 60-1 at 9 §§ 4.1, 4.4; Doc. 39-3 at ¶ 21. From this, the North Carolina employees will receive "two years of unpaid back wages plus 86.42% of their liquidated [double] damages for the same time period, including an amount for unauthorized deductions." Doc. 60-1 at 10 § 4.6(b). The South Carolina employees will receive "three years of unpaid back wages straight plus 86.42% of their liquidated [double] damages for two years." *Id.*

The employees will receive the money in two checks: "one check [will be] paid as alleged back wages under IRS Form W-2 requirements with appropriate tax withholdings and the second check [will be] paid as alleged liquidated damages under IRS Form 1099" with no payroll deductions or withholding. *Id.* at 10 § 4.7; *id.* at 32, 45. Any unclaimed funds will go to the Farm Labor Research Project, Inc. d/b/a Campaign for Migrant Worker Justice and the North Carolina Justice Center. *Id.* at 11 § 4.8(c); Doc. 39-3 at ¶ 24. If claimants do not timely cash their settlement checks, those unclaimed funds will also go to these two nonprofits. Doc. 60-1 at 12 § 4.11.

The Court worked closely with the parties to make the notices shorter and clearer. *See* Doc. 39-2 at 27–73 (the parties' revised notices); Text Order 10/19/2022; Docs. 44, 47 (the Court's revisions to the notices); Minute Entry 11/16/2022 (asking the parties to consult and submit revised proposals); Docs. 49–50 (final versions). The final versions of the approved notices adequately explained the case, included a chart that lists the options available to putative class and collective members, and contained an exhibit

5

detailing the amounts owed to each employee.[2] *See* Docs. 49–50. As explained in the notices, class members were required to submit a claim form to receive payment, and, if collective members wanted to opt-in to the FLSA collective actions, they were also required to sign a consent to sue. *See* Doc. 49 at 6–7; Doc. 50 at 6. The notices sufficiently informed putative class and collective members of the proposed settlement because, as discussed *infra*, most of the funds have been claimed and news of the settlement reached employees who were not originally identified by the parties.

After resolving the notice issues, the Court entered an order that, among other things: (1) provisionally certified the two Rule 23 classes for settlement purposes only; (2) conditionally certified the two FLSA collective actions; (3) appointed Mr. Willis and Mr. Haaf as class counsel; (4) appointed Mr. Willis to serve as the settlement administrator; and (5) approved the parties' proposed notices. *See* Doc. 51.

### D. Post-Preliminary Approval

Shortly after preliminary approval, the parties advised the case manager via email that some of the terms in the proposed settlement agreement needed to be revised to conform to the notices approved by the Court, to correct a mistake on the opt-in deadline for the FLSA collective actions, and to add the final fairness hearing date to the CAFA notices. They filed a revised settlement agreement, Doc. 53-1, along with revised CAFA

---

[2] Plaintiffs' counsel recently pointed out that there were clerical errors in the North and South Carolina notice on the amounts owed to two employees. Doc. 60-4 at ¶¶ 1, 4, 5. These errors have been corrected in the final settlement agreement. Doc. 60-1 at 37, 48 (reflecting revised totals for plaintiffs Deshawn Bryant and William Tyler Knight).

6

Case 1:21-cv-00748-CCE-JEP   Document 64   Filed 04/20/23   Page 6 of 20

notices. Doc. 53-2. The Court amended the Preliminary Approval Order to expressly incorporate these documents. Doc. 54.

On December 13, 2022, Mr. Willis mailed the notices to the putative class and collective members in the manner approved by the Court. Doc. 58-1 at ¶ 21; *see id.* at ¶¶ 19–20 (detailing steps taken to comply with the Preliminary Approval Order).

On December 28, 2022, Jarrett Grier, an employee who was not previously listed as a putative class and collective member, contacted Mr. Willis and told him he worked for Grapevine during the time period covered by the settlement. Doc. 55 at ¶¶ 1–2. Plaintiffs' counsel informed the defendants about Mr. Grier, *id.* at ¶ 3, which prompted Grapevine to review its records again. *See id.* at ¶ 4. Grapevine identified four additional employees who may have been due compensation under the settlement. *See id.* But only two of those employees, Mr. Grier and George Bostick, worked for Grapevine during the time period covered by the settlement. *Id.* The defendant Scott Cohen later submitted an affidavit stating he thoroughly reviewed Grapevine's records and confirmed that all employees who are due back wages have now been identified. Doc. 57 at ¶¶ 2–3.

The defendants have agreed to pay Mr. Grier and Mr. Bostick in addition to the funds already agreed upon in the proposed settlement, using the same formula of 100% back wages and 86.42% in liquidated damages. Doc. 55 at ¶ 6; *see* Doc. 63-1 at 1; Doc. 63-2 at 1. Specifically, the defendants will pay an extra $3,925.59 to settle the claims of Mr. Grier and Mr. Bostick. *See* Doc. 58-1 at ¶ 15; Doc. 63-2 at 2 (Mr. Grier's proposed settlement agreement for $3,076.57); Doc. 63-1 at 2 (Mr. Bostick's proposed settlement agreement for $849.02). The defendants also agree to pay for the additional time

7

plaintiffs' counsel spent on representing Mr. Grier and Mr. Bostick. Doc. 58-1 at ¶ 17; *see* Doc. 58-6.

On March 23, 2023, Mr. Willis submitted detailed reports on the claims process. Doc. 58-1 at ¶¶ 21–24; *see* Docs. 58-2, 58-3, 58-4, 58-5. The North Carolina employees have claimed $76,707.24, which is 94.6% of the available funds for the North Carolina class and collective. Doc. 58-1 at ¶ 15; Doc. 60-4 at ¶ 2. The South Carolina employees have claimed $14,913.03, which is 77.4% of the available funds for the South Carolina class and collective. Doc. 58-1 at ¶ 15; Doc. 60-4 at ¶ 3. No one filed any objections to the proposed settlement, and no one asked to be excluded from the Rule 23 classes. Doc. 58-1 at ¶¶ 21, 23.

The Court held the final fairness hearing on April 20, 2023. Attorneys Robert Willis and Chris Haaf appeared for the plaintiffs and class members. Minute Entry 04/20/2023. Attorneys Kurt Seeber and J. Alexander Barrett appeared for the defendants. *Id.* The Court heard from, and reviewed the settlement with, counsel.

## II. Final Settlement Approval

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 14-CV-1583, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 *Newberg & Rubenstein on Class Actions* § 13.44, n.1 (6th ed. 2022) (collecting cases) (hereinafter *Newberg*).

8

### A. Rule 23 Settlements

The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Roldan v. Bland Landscaping Co.*, No. 20-CV-276, 2022 WL 17824035, at *2 (W.D.N.C. Dec. 19, 2022) (cleaned up); *see also Beaulieu v. EQ Indus. Servs., Inc.*, No. 6-CV-400, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing, *e.g.*, *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293–94 (4th Cir. 2019); *1988 Trust For Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022).

There are two Rule 23 classes in this case: (1) the NCWHA class for the North Carolina overtime claims and the unauthorized deductions claims which spans two years and (2) the SCPWA class for the South Carolina overtime claims which spans three years. *See* Doc. 51 at 6–7.

#### 1. Fairness

A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [law at issue]." *In re Jiffy Lube*, 927 F.2d at 159; *see also 1988 Trust*, 28 F.4th at 525 (applying same standard).

9

Here, all four fairness factors support final approval. The case has been pending for over a year. The parties engaged in informal discovery. Grapevine produced wage and timekeeping records for the 101 employees who were putative members of any of the class or collective actions alleged by the plaintiffs. Doc. 39-3 at ¶ 9. Plaintiffs' counsel used this payroll data to calculate the total amount of back wages, liquidated damages, and damages for unauthorized deductions. *Id.* at ¶¶ 6, 12, 18; Doc. 58-1 at ¶ 15. Thus, plaintiffs' counsel had sufficient evidence and information to fairly negotiate the settlement amount.

Although the parties worked cooperatively the entire time, the defendants provided documentation to support their assertions, and the record indicates the settlement was negotiated at arm's length. The parties turned to mediation early. Doc. 39-3 at ¶¶ 6–7. With the help of an experienced wage-and-hour mediator, they reached an agreement in principle at the mediation, subject to court approval. *Id.*; *see* Doc. 18.

There is no evidence of any collusion or improper conduct. *See* Doc. 39-3 at ¶ 26. Plaintiffs' counsel is experienced in employment law and aggregate litigation. *See id.* at ¶ 27; Doc. 58-1 at ¶¶ 9–13; Doc. 59-1 at ¶ 10.

### 2. Adequacy and Reasonableness

The Court assesses the adequacy of the settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5)

the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159; *1988 Trust*, 28 F.4th at 526 (applying same factors). The first two factors are the most important. *Sharp Farms*, 917 F.3d at 299. In assessing reasonableness, the Court examines "the amount of the settlement" and "ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *1988 Trust*, 28 F.4th at 527.

Considering the costs and delay of litigation, the strength of the plaintiffs' claims, and the existence of possible defenses, the settlement is adequate and reasonable.

After combing through a large number of records and researching the underlying claims, Doc. 39-3 at ¶ 9, Doc. 58-1 at ¶ 15, plaintiffs' counsel calculated that the value of the claims in the complaint totaled a maximum of $170,483.77 in back wages, liquidated damages, and other damages. Doc. 39-3 at ¶ 18. This assumed that all collective action members opted-in, that the plaintiffs could secure double and treble damages where available, and that the FLSA statute of limitations was extended from the usual two years to three years. *Id.* at ¶¶ 12, 18.

During negotiations, the defendants raised several defenses against this full calculation of damages; some of the defenses concern only the state law claims and some concern only the FLSA claims. *See infra* pages 12–14. Because of these defenses, the parties agreed to a settlement amount of $100,403.60, plus an award $6,000 to be divided equally between the two named plaintiffs. Doc. 39-3 at ¶ 21; *see* Doc. 60-1 at 9 §§ 4.1, 4.4. The total recovery is about 59% of the amount initially calculated by plaintiffs'

11

counsel. Doc. 39-3 at ¶¶ 24, 29. Considering the defenses raised, the proposed settlement is adequate and reasonable.

First, the plaintiffs' calculations were for three years of overtime under the FLSA. *Id.* at ¶ 12. But the statute of limitations under the FLSA extends from two years to three years only if the plaintiffs could prove that the defendants willfully violated the FLSA. *See* 29 U.S.C. § 255(a); *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015). While at first it seemed that the parties disputed whether there was evidence of willfulness, plaintiffs' counsel clarified at the September hearing that the employees who worked overtime in that third year, from 2018–2019, cannot recover for those hours under the FLSA because the statute of limitations for a non-named collective action member continues to run until the member files the consent to sue with the court. *See* 29 U.S.C. § 256(b); *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). So even if the plaintiffs had evidence of willfulness, it was too late for non-named plaintiffs to recover for that third year under the FLSA. Because of this, the defendants were unwilling to pay anything towards the third year and a settlement that does not provide these damages is adequate.

Second, the plaintiffs' calculations called for double damages as to the FLSA and the NCWHA overtime claims, *see* Doc. 39-3 at ¶ 12, but the plaintiffs may not have recovered double damages under either statute if the defendants showed that they acted in good faith and had reasonable grounds to believe they were not violating the law. *See* 29 U.S.C. § 260; *Calderon*, 809 F.3d at 132; N.C. Gen. Stat. § 95-25.22(a1). The defendants contended they acted in good faith because they committed an honest administrative

12

mistake. Despite this defense, the defendants are willing to pay about 86% of double damages to employees bringing claims under the NCWHA and the FLSA. *See* Doc. 60-1 at 10 § 4.6(b). Payment of double damages then is adequate.

Third, the plaintiffs' calculations included treble damages for the South Carolina violations.[3] Treble damages are not mandatory under South Carolina law, their purpose is punitive in nature, *Rice v. Multimedia, Inc.*, 456 S.E.2d 381, 383 (S.C. 1995), and they are not available when a bona fide dispute exists. *Atkinson v. House of Raeford Farms, Inc.*, Nos. 9-CV-1901, 9-CV-3137, 2012 WL 2871747, at *2 (D.S.C. July 12, 2012). As the parties explained in response to questions from the Court, *see* Text Order 09/15/2022, the evidence supported at most a finding of negligence, and there is no evidence that Grapevine acted in bad faith. *See* Doc. 40 at 24 (citing *Young v. CareAlliance Health Servs.*, No. 12-CV-2337, 2014 WL 4955225, at *14 (D.S.C. Sept. 29, 2014) (refusing to award treble damages when the plaintiff "put forward no evidence of bad faith on the part of" the defendant)). Grapevine's conduct since learning of the error has been commendable; it quickly and comprehensively cooperated with the plaintiffs after discovering the pay discrepancy, it is paying full back wages and almost full double damages under the FLSA, and it quickly corrected the negligent practices that led to this dispute. On these facts and given that treble damages are discretionary, an award of treble damages to the South Carolina plaintiffs is highly unlikely, making the plaintiffs' settlement decision to abandon treble damages reasonable. The South Carolina plaintiffs

---

[3] Unlike the NCWHA and the FLSA, the SCPWA allows for treble damages. *See* S.C. Code Ann. § 41-10-80(c); N.C. Gen. Stat. § 95-25.22(a1); 29 U.S.C. § 216(b).

13

are still recovering full back wages and a generous amount of double damages, all without a trial or discovery.

The service awards of $3,000 to Mr. Glymph-Dozier and Mr. Hill, Doc. 60-1 at 9 § 4.4, are also reasonable. They have communicated with plaintiffs' counsel since before the action was filed, provided necessary information to help plaintiffs' counsel file the complaint and negotiate the settlement, participated in the all-day mediation session, and took their obligations as class representatives seriously. *See* Doc. 58-1 at ¶¶ 4–7. The notices specified these awards, *see* Doc. 49 at 3, Doc. 50 at 3, and no one filed any objections. *See* Doc. 58-1 at ¶ 21.

The non-monetary terms of the proposed settlement are also reasonable. Although the settlement does not include injunctive relief, the defendants have since changed their practices to comply with relevant wage-and-hour laws. And in any event, equitable relief is not available for private parties under the NCWHA, the SCPWA, or the FLSA.[4]

One of the entities released under the proposed settlement agreement, Grapevine Imports LLC, is not a party to the suit. *See* Doc. 60-1 at 3 § 1.9. But courts may approve of agreements releasing non-parties so long as "the claims against the non-party being released [are] based on the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

---

[4] *See* N.C. Gen. Stat. § 95-47.10 (noting the commissioner may apply for injunctions); S.C. Code Ann. § 41-14-100 (noting the "board" may "petition the Administrative Law Court for equitable relief to enjoin a violation"); 29 U.S.C. § 211(a) (noting "the Administrator shall bring all actions . . . to restrain violations"); *Frazier v. Courter*, 958 F. Supp. 252, 254 (W.D. Va. 1997) ("The FLSA has been interpreted as precluding an employee's access to injunctive relief" (collecting cases)).

396 F.3d 96, 109 (2d Cir. 2005) (cleaned up); *see also* 6 *Newberg* § 18:20 (6th ed. 2022). Here, Grapevine Imports LLC is a holding company for the Grapevine enterprise. Thus, the claims against it are the same claims asserted against the named defendants.

The proposed settlement is adequate and reasonable.

### B. FLSA Settlements

District courts in this circuit review a proposed FLSA settlement by evaluating whether it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (cleaned up); *see also, e.g.*, *Blackmon v. Cohen*, No. 17-CV-890, 2020 WL 91914, at *1 (M.D.N.C. Jan. 8, 2020). Specifically, courts evaluate: "(1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of attorneys' fees, if included in the agreement." *Duprey*, 30 F. Supp. 3d at 408; *see also, e.g.*, *Blackmon*, 2020 WL 91914, at *1.

The fact that the defendants admitted to a negligent oversight shows that the defendants did in fact commit FLSA violations, and the reasonableness of attorney's fees is discussed *infra*. That leaves whether the terms of the settlement for the collective actions are a fair and reasonable compromise of the disputed issues.

There are two collective actions in this case. One is for Grapevine employees who worked in South Carolina from September 25, 2019, to September 25, 2021. Doc. 51 at 4; Doc. 41 at 3. The other is for Grapevine employees who worked in North Carolina from September 25, 2019, to September 25, 2021. Doc. 51 at 4; Doc. 41 at 2. As

15

discussed in detail previously, *see supra* pages 11–14, the recovery for the plaintiffs is fair and reasonable.

The proposed settlement agreement arranges the recovery under the FLSA for these two collective actions differently because the North Carolina collective completely overlaps with the North Carolina class while the South Carolina collective only partially overlaps with the South Carolina class. *See* Doc. 39-3 at ¶¶ 21–22. The South Carolina plaintiffs were required to opt-in to the collective action to receive double damages under the FLSA, *see* Doc. 50 at 6, Doc. 39-3 at ¶ 22, but the North Carolina plaintiffs who opted-in to the FLSA collective action will receive no extra money than those who did not.[5] *See* Doc. 49 at 6; Doc. 39-3 at ¶ 21.

There are no concerns with the release for the South Carolina collective because the plaintiffs who opted-in to the FLSA collective action will release their FLSA claims in exchange for the liquidated damages. Doc. 39-3 at ¶ 22.

While the North Carolina plaintiffs who opted-in to the North Carolina collective action will not receive any additional money in exchange for releasing their FLSA claims, *see id.* at ¶ 21, the damages available for the North Carolina class and collective are the same, and double recovery is generally not allowed. *See Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 490 (D.D.C. 2019) (citing *Perez v. C.R. Calderon Constr.,*

---

[5] The differences between the North and South Carolina groups were likely to be confusing to employees who fall in both groups. But only one plaintiff is a member of both groups, named plaintiff Solomon Hill. *See* Doc. 27-2 at 47–51 (original combined notice showing Mr. Hill is the only plaintiff who worked in both states). Mr. Hill is a named plaintiff, Doc. 1 at ¶ 1, and has already opted-in to the FLSA collective action. *See* Doc. 1-2.

16

*Inc.*, 221 F. Supp. 3d 115, 139 (D.D.C. 2016)); *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). Thus, it is reasonable to require the North Carolina plaintiffs who opted-in to the North Carolina collective to release their FLSA claims for no additional money. And, as the notice makes clear, the plaintiffs had an option to be part of the NCWHA class and receive the settlement funds without opting-in to the North Carolina collective and releasing their FLSA claims. *See* Doc. 49 at 6 (showing an option to receive settlement funds without opting-in to the collective action).

### III. Attorney's Fees

Rule 23 and the FLSA allow for the award of reasonable attorney's fees and expenses. *Hall v. Higher One Machs., Inc.*, No. 15-CV-670, 2016 WL 5416582, at *7 (E.D.N.C. Sept. 26, 2016); *see* Fed. R. Civ. P. 23(h) ("[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); 29 U.S.C. § 216(b) (noting the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). The relevant state statutes also allow for an award of attorney's fees. *See* N.C. Gen. Stat. § 95-25.22(d); S.C. Code Ann. § 41-10-80(C). The Fourth Circuit generally uses the lodestar method for determining a reasonable fee in an FLSA settlement, defined as a reasonable hourly rate multiplied by hours reasonably expended. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *Duprey*, 30 F. Supp. 3d at 412.

Here, the defendants have agreed to pay a reasonable amount in attorney's fees and costs separate from the funds payable to the class and collective members. Specifically, the defendants have stipulated under Local Rule 54.2 to pay plaintiffs'

17

counsel $2,052.60 for litigation and administrative costs, $63,175.00 for attorney's fees and costs up to the date of signing the settlement agreement, and $18,050.00 for attorney's fees and costs for all time spent after such signing, including settlement administration. *See* Doc. 61 at 12; Doc. 60-1 at 9 § 4.3; Doc. 58-6 at 1; Doc. 21-1 at ¶¶ 1(c), 2. The defendants have also stipulated under Local Rule 54.2 to pay an additional $10,516.21 to be distributed between Mr. Willis and Mr. Haaf for the representation of Mr. Grier and Mr. Bostick. *See* Doc. 58-1 at ¶ 17; Doc. 58-6 at 2; Doc. 58-9 at 3 (showing total fees and costs for Mr. Willis equal $6,836.91); Doc. 59-3 at 3 (showing total fees and costs for Mr. Haaf equal $3,679.30)

Plaintiffs' counsel spent a considerable amount of time researching the claims, combing through Grapevine's records, negotiating the settlement, administering the settlement, and representing the two recently-identified employees. *See* Docs. 58-7, 58-9 (239.95 total hours for Mr. Willis); Docs. 59-2, 59-3 (254.4 total hours for Mr. Haaf); Doc. 58-8 (26.2 total hours for legal assistants); *see also* Doc. 58-1 at ¶¶ 16–17; Doc. 59-1 at ¶¶ 11–12. At lodestar rates of $110, $350, and $425,[6] *see* Doc. 58-8 at 2, Doc. 59-2 at 12, Doc. 58-7 at 26, the total amount of attorney's fees and costs well exceeds the cap provided in the proposed settlement agreement. Considering the complexity of the

---

[6] The hourly rates of the plaintiffs' counsel are within the range of reasonable amounts that courts in this geographic area have previously approved. *See* Doc. 39-3 at ¶ 20; Doc. 58-1 at ¶ 18; *Hood v. Uber Techs., Inc.*, No. 16-CV-998, 2019 WL 93546, at *7 (M.D.N.C. Jan. 3, 2019), *aff'd sub nom. Haskett v. Uber Techs., Inc.*, 780 F. App'x 25 (4th Cir. 2019) (per curiam) (unpublished); *Pflueger v. SicilyBeby enterprizes LLC*, No. 18-CV-144, Doc. 24 (M.D.N.C. Mar. 14, 2019); *Torres-Tinajero v. Alpha Const. of the Triad, Inc.*, No. 18-CV-160, Doc. 75 at ¶¶ 8,10 (M.D.N.C. Nov. 3, 2020).

18

issues in this case, the amount of work needed to investigate the claims and negotiate the settlement, and the parties' stipulation under the Local Rules, the amount of attorney's fees and costs requested is reasonable and will be approved.

## IV. Conclusion

The proposed settlement agreement for the classes and collectives and the proposed settlement agreements for Mr. Grier and Mr. Bostick are fair, adequate, and reasonable to the parties. The amount of requested attorney's fees and costs are also reasonable. The joint motion for final approval of the class and collective action settlement will be approved.

It is **ORDERED** that:

1. The joint motion for final approval of the class and collective action settlement, Doc. 60, is **GRANTED**.
2. The classes and collective actions provisionally certified in the Preliminary Approval Order, Doc. 51 at 4, 6–7, are hereby finally **CERTIFIED**.
3. The proposed settlement agreement for the classes and collectives, Doc. 60-1, is **APPROVED** as fair, adequate, and reasonable to the parties.
4. The proposed settlement agreements for George Bostick, Doc. 63-1, and Jarrett Grier, Doc. 63-2, are **APPROVED** as fair, adequate, and reasonable.

5. The attorney's fees and costs for work performed on behalf of the classes and collectives and for work performed on behalf of George Bostick and Jarrett Grier are **APPROVED** as fair and reasonable.

6. Payment **SHALL** be made under the terms of the Final Settlement Agreements. Docs. 60-1, 63-1, 63-2.

7. Robert Willis **SHALL** provide a letter to counsel for the defendants within 15 days of mailing the settlement checks verifying that he has distributed the settlement checks and the service awards as set forth in Section 8.3 of the Final Settlement Agreement. Doc. 60-1 at 17.

8. The claims are **DISMISSED** with prejudice.

9. For the reasons specified in Section 8.4 of the Settlement Agreement, Doc. 60-1 at 17–18, the Court will retain jurisdiction over this matter for 90 days for the purposes of enforcing this Agreement, addressing Settlement Administration matters, and addressing other post-judgment matters as may be appropriate.

10. Judgment will be entered separately.

This the 20th day of April, 2023.

_____
UNITED STATES DISTRICT JUDGE

20

Case 1:21-cv-00748-CCE-JEP   Document 64   Filed 04/20/23   Page 20 of 20